*E-Filed 5/25/12*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEXANDER BALBUENA, | No. C 11-0228 RS (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| MARTIN BITER, Warden, and THE CALIFORNIA ATTORNEY GENERAL, | |
| Respondents. | |

## INTRODUCTION

This is a federal habeas corpus action filed by a *pro se* state prisoner pursuant to 28 U.S.C. § 2254 in order to challenge his state convictions. For the reasons set forth below, the petition is DENIED.

## BACKGROUND

In 2008, a Contra Costa County Superior Court jury found petitioner, a 16 year-old who was tried as an adult, guilty of first degree murder, attempted murder, and street terrorism. Evidence presented at trial shows that in 2006 petitioner and co-conspirators shot and killed Jose Segura, an MS13 gang member, in revenge for Jose's killing of Gizmo,

petitioner's friend and fellow RST[1] gang member, earlier that day.[2] Petitioner was sentenced to a term of eighty-two years-to-life in state prison, a sentence reduced on appeal to seventy-two years-to-life. Other than this sentence reduction, petitioner was denied relief on state judicial review. This federal habeas petition followed. As grounds for federal habeas relief, petitioner claims: (1) the trial court violated his right to due process by failing to exclude his coerced confession;[3] (2) the trial court failed to give proper jury instructions;[4] (3) defense counsel rendered ineffective assistance by failing to object to expert testimony; and (4) the trial court violated his due process right to personal presence at all critical stages of the criminal proceeding.

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

---

[1] sc. Richmond Sur Trece. (Ans., Ex. 8 at 6.)

[2] Petitioner shot at Segura while he sat in his car with Oralia Giron, the mother of Segura's children, a three-year-old daughter and three-month-old son, who were also in the car at the time of the shooting. Oralia was wounded by gunfire, but the children were not. (Ans., Ex. 8 at

[3] The Order to Show Cause characterized petitioner's claim as an alleged violation of the Fifth Amendment's right against self-incrimination (Docket No. 3), but it is more commonly characterized as a due process claim.

[4] This is a consolidation of Claims 2 and 5 listed in the petition.

United States District Court
For the Northern District of California

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

## DISCUSSION

### I. Admission of Confession

Petitioner claims the trial court violated his right to due process by failing to exclude his coerced confession. (Pet. at 6(a).) He contends the detectives who interrogated him after his arrest elicited his confession by offering leniency in his sentence in exchange for honesty, including directing petitioner as to what story would be viewed as honest. (*Id.* at 6(b)–(e).) Specifically, petitioner maintains the detectives gave him a "very clear impression" that if they believed he was "'honest' and told the 'truth,' he would not get 'twenty-five to life or life without' and 'die in prison,' but would instead see his baby 'in a few years.'" (*Id.* at 6(c).)

The state appellate court largely disagreed with petitioner's interpretation, and determined that several of the interrogators' statements were permissible:

> Several of the passages [petitioner] cites involve general exhortations for [petitioner] to tell the truth, sometimes combined with [the] suggestion that this might allow the officers to "help" him[, such as]: "This is where it's important

> for you to be honest with us so if there is some way to help yourself out this is the time to do it"; "Be honest. This is the only time we can help you out man" . . . These statements by the detectives did not promise any specific benefit to [petitioner], but only such benefits as "flow[] naturally from a truthful and honest course of conduct," which is permissible. Encouraging a suspect to tell the truth by suggesting this will be to his or her advantage is permissible.

(Ans., Ex. 8 at 21) (internal citation omitted).

The state appellate court determined that the police did make some improper statements, specifically offers of leniency in exchange for honesty, e.g., "the detectives told [petitioner] he would be tried as an adult and would soon be "fighting for [his] life," that he faced "twenty-five to life," and that if he did not show remorse, he would be "looking at . . . [¶][t]wenty-five to life or life without." (Ans., Ex. 8 at 22.) Yet, the state court concluded that such improper statements did not render the confession involuntary because (1) petitioner made critical admissions regarding the shooting "before improper tactics were employed," (2) the totality of the circumstances show that the crucial admissions were "voluntary and not coerced," the videotape showing that police interrogation "was not overtly harsh or threatening," and (3) any error was harmless:

> As explained, the crucial admissions that [petitioner] shot at the front window of the car with a .32 caliber were admissible. And even aside from [petitioner's] confession, the evidence against him was very strong. According to [Detective] Goldberg's description of [the statements of K.L., a witness to the shooting],[5] she saw [petitioner] get a gun from a van and [petitioner's co-conspirator] Jujakas get a gun from a Chevy Tahoe, saw the van, [petitioner] and Jujakas leave the area, and minutes later heard nine gunshots. She then saw [petitioner] and Jujakas running back to the house, Jujakas getting into a vehicle and [petitioner] entering the house and apparently attempting to get rid of a gun. Later in the day, [petitioner] told her he had shot the victim in the forehead. In the taped interview that was played for the jury, K.L. told the police she saw [petitioner] get into a car that drove toward the scene of the shooting while Jujakas ran toward it with a gun, and after hearing the gun shots, saw [petitioner] return to the house and attempt to put what she believed to be a gun under the couch, then run and jump into the black Tahoe that Jujakas had already gotten into. Later, [petitioner] told her he shot the victim

---

[5] K.L, a fifteen-year-old female, had some connection with petitioner. When the police came to arrest petitioner, he was lying in bed with his girlfriend and with a child who was K.L.'s son. (Ans, Ex. 8 at 8.) Also, she rented a room from Juan Herrera (aka Willow) who was one of the shooters. (*Id.* at 5, 10 & 11.)

in the forehead.[6]

(Ans., Ex. 8 at 21–26.)

Involuntary confessions in state criminal cases are inadmissible under the Fourteenth Amendment. *Blackburn v. Alabama*, 361 U.S. 199, 207 (1960). A court on direct review is required to determine, in light of the totality of the circumstances, "whether a confession [was] made freely, voluntarily and without compulsion or inducement of any sort." *Withrow v. Williams*, 507 U.S. 680, 689 (1993) (internal quotation marks and citation omitted). A federal habeas court must review de novo the state court's finding that a confession was voluntarily given. *Derrick v. Peterson*, 924 F.2d 813, 818 (9th Cir. 1990). But a state court's subsidiary factual conclusions are entitled to the presumption of correctness. *Rupe v. Wood*, 93 F.3d 1434, 1444 (9th Cir. 1996) (deferring to state appellate court's conclusion that challenged statement did not constitute threat or promise).

"[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). The interrogation techniques of the officer must be "the kind of misbehavior that so shocks the sensibilities of civilized society as to warrant a federal intrusion into the criminal processes of the States." *Moran v. Burbine*, 475 U.S. 412, 433–34 (1986). Generally encouraging a petitioner to tell the truth does not amount to police coercion. *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 494 (9th Cir. 1997). Police deception alone "does not render [a] confession involuntary," *United States v. Miller*, 984 F.2d 1028, 1031 (9th Cir. 1993), nor is it coercive to recite potential penalties or sentences, including the potential penalties for lying to the interviewer, *United States v. Haswood*, 350 F.3d 1024, 1029 (9th Cir. 2003).

---

[6] At trial, K.L. recanted her statements inculpating petitioner. The state appellate court found her recantation implausible: "K.L. testified that she did not know where [petitioner] lived and that she identified a random house when the police asked her to show them. Yet when the police went to precisely the apartment K.L. pointed out, they found not only [petitioner] but also K.L.'s own child. There is little chance the jury could have concluded K.L.'s trial testimony, rather than her prior statements to police, was truthful." (Ans, Ex. 8 at 25–26.)

1 The suspect's age may be taken into account in determining whether a confession was voluntary. *Doody v. Ryan*, 649 F.3d 986, 1008 (9th Cir. 2011) (en banc). Even in the case of a juvenile, indicating that a cooperative attitude would be to the benefit of an accused does not render a confession involuntary unless such remarks rise to the level of being "threatening or coercive." *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (quoting *Fare v. Michael C.*, 442 U.S. 707, 727 (1979)). Again, the pivotal question in cases involving psychological coercion, "is whether [, in light of the totality of the circumstances,] the defendant's will was overborne when the defendant confessed." *United States v. Miller*, 984 F.2d 1028, 1031 (9th Cir.1993).

Petitioner has not shown that his confession was involuntary. After a careful review of the videotape of Detectives Goldberg and Pate interrogating petitioner (Ans., Ex. 11), this Court agrees with the state trial court's finding that the totality of the circumstances do not show coercive interrogation tactics, but instead indicate a "[r]emarkably . . . non-threatening atmosphere for a police interrogation." (Ans., Ex. 3, Vol. 1 at 147.) Although petitioner was a juvenile at the time of the interrogation, the trial court found he was "relatively mature for his age," "was in strong degree of control of his own emotions and the conversation occurring," and there was no indication "he felt intimidated or afraid of the officers, either physically or psychologically." (*Id.* at 144.) To the extent petitioner relies on these general assertions of encouragement, his claim must fail.

Even where the detectives did link truthfulness with a specific sentence,[7] petitioner has not shown that such an interrogation tactic was so coercive that it caused his will to be overborne. First, it is not coercive to recite potential penalties or sentences, including the

---

[7] (S*ee, e.g.*, Ans., Ex. 1, Vol. 1 at 37 ("You need to get out in front of this case by saying look detectives, this is what happened[,] . . . all of it or nothing my friend, otherwise . . . [you're] looking at . . . [t]wenty-five to life or life without. . . . It's gonna be one of those two different things.")). Although petitioner claims the detectives actually linked his cooperation with being able to see his baby "in a few years" (Pet. at 6(c)), the state appellate court properly agreed with the trial court's characterization that the detectives were "'indicating life without possibility of parole without cooperation, as opposed to 25 to life with cooperation,'" (Ex. 8 at 23 n.8).

United States District Court
For the Northern District of California

potential penalties for lying to the interviewer. *Haswood*, 350 F.3d at 1029. Second, though the police lied to petitioner about some of the evidence they had (Ans., Ex. 8 at 9 & 18–19), such deceptions do not render the confession involuntary either when taken on their own or seen in the totality of the circumstances. Third, even assuming such statements were improper, there is no basis for concluding that the confession was involuntary unless there is a causal relation between the police misconduct and the confession. *Connelly*, 479 U.S. at 164. As the state appellate court noted, several critical admissions were made before any improper tactics were employed, including his statements that he was in front of the car, that he had the .32 caliber gun, and that he shot three or four rounds at the front window of the car. (Ans., Ex. 8 at 22–23.) For this same reason, petitioner has not shown how any potentially involuntary admissions following these voluntary statements had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Accordingly, petitioner's claim is DENIED.

## II. Failure to Give Instructions

### A. "Caution" Instructions

Petitioner claims the trial court violated his rights to due process and to present a defense by instructing the jury it should view *unrecorded* statements with caution.[8] (Pet. at 6(e).) Petitioner maintains this instruction left the jury with the impression that they need not view *recorded* statements with the same caution.[9] (*Id.* at 6(h).) Petitioner argues this presents a unique concern given the defense depended on convincing the jury that his recorded confession was involuntary and should be viewed with caution. (*Id.* at 6(h).)

The state appellate court rejected petitioner's claim because:

> For the jurors to have inferred from the challenged instruction that they were not permitted to view recorded admissions and confessions with caution, they would have had to believe that the trial court permitted the defense to present a

---

[8] References to unrecorded statements pertain to evidence that petitioner told K.L. he shot Jose Segura.

[9] References to recorded statements pertain to petitioner's videotaped confession.

> theory of the case that was entirely irrelevant.
>
> Moreover, the prosecutor never asked the jury to draw the inference [petitioner] suggests . . . [Though] [h]e did argue that the jury should believe [petitioner's] confession to the police, for reasons including that "people are not likely to say something bad about themselves unless it's true," that [petitioner] gave many details about the shooting that he would only have known by being there, and that the confession was corroborated by other evidence. It was never suggested that the confession should be taken as truth because it was recorded.

(Ans., Ex. 8 at 29–31) (footnote omitted).

A state trial court's failure to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceeding. *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988). The error must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment. *Id.* Furthermore, the omission of an instruction is less likely to be prejudicial than a misstatement of the law. *Walker v. Endell*, 850 F.2d 470, 475 (9th Cir. 1987) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). Thus, a petitioner whose claim involves a failure to give a particular instruction, as opposed to an instruction that misstated the law, bears an "especially heavy burden." *Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997) (quoting *Henderson*, 431 U.S. at 155).

Petitioner's claim is without merit. First, he concedes that normally a cautionary instruction should only be given when the jury is presented with an unrecorded admission or confession. (Pet. at 6(g).) Thus, there is no dispute that the trial court correctly stated the law in its jury instruction. Second, as the state appellate court noted, the purpose of a cautionary instruction is to assist the jury in determining whether the statement was actually made (Ans., Ex. 8 at 27), not whether the jury should believe the statement was true. Because petitioner's confession was recorded, there is no question that the recorded statement was in fact made. Third, the defense was still able to present its theory that petitioner's recorded confession was a product of coercion, involuntarily made, and although spoken, was unreliable and should not be believed. (*See, e.g.*, Ans., Ex. 3, Vol. 3 at 624–31, 638, 642, 648–49.) The fact that a cautionary instruction was not given as to petitioner's

1 recorded statements did not alter the jury's ability to evaluate whether petitioner made a false 2 confession. Indeed, the prosecutor never asked the jury to view petitioner's recorded 3 confession as true simply because it was recorded. Instead, the prosecutor argued the 4 confession was reliable because petitioner gave many details about the shooting that he 5 would have known only by being at the incident, and the confession was substantially 6 corroborated by other evidence. (*See, e.g.*, *id.* at 591–602.) Based on the above reasoning, 7 the failure to instruct the jury to view recorded statements with caution did not deprive 8 petitioner of a fair trial. Accordingly, petitioner's claim is DENIED.

### B. Lesser-included Enhancement

Petitioner claims the trial court violated his right to a jury trial by giving the jury written instructions pursuant to California Penal Code § 12022.53(c) on the enhancement for personal discharge of a firearm in the commission of the murder and attempted murder counts while failing to give written instructions pursuant to § 12022.53(b) on the lesser-included enhancement for personal use (without discharge) of a firearm. (Pet. at 6(q)–r.) The state appellate court rejected petitioner's claim, concluding that California trial courts do not have a *sua sponte* duty to instruct on lesser-included enhancements. (Ans., Ex. 8 at 44.)

Petitioner's claim is without merit. First, he has not shown that he has a federal constitutional right to have the jury instructed on a lesser-included sentencing enhancement. It is clear the failure of a state trial court to instruct on lesser-included offenses in a non-capital case does not present a federal constitutional claim. *See Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000).[10] However, "the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule." *Id.* at 929 (citation omitted). *Solis* suggests there must be substantial

---

[10] Although *Solis* speaks only to a petitioner's right to a jury instruction of a criminal offense, if *Solis* holds there is no constitutional right to an instruction on a lesser-included offense, which relates to the substantive elements of a crime, it is reasonable to assume there is also no constitutional right to an instruction on a lesser-included enhancement, which only relates to sentencing.

1  evidence to warrant petitioner's desired instruction. *See id.* at 929–30. Petitioner has not
2  shown in his petition that his theory of the case constituted an exception to the general rule.
3      Second, that the jury did not receive the sentencing provision under § 12022.53(b), a
4  standard for the substantive offenses of murder and attempted murder consistent with that
5  which the jury was properly instructed, does not raise the possibility that the jury's verdict
6  would have been different. This is particularly so given the fact that a "not true" finding on
7  the discharge allegation under section 12022.53(c) could *also* reflect a determination that
8  petitioner had a firearm but did not discharge it, despite petitioner's belief otherwise, (*see*
9  Pet. at 6r). Accordingly, petitioner's claim is DENIED.

## III.  Assistance of Counsel

Petitioner claims his defense counsel rendered ineffective assistance by failing to object to expert testimony that petitioner not only committed the shooting, but committed it with the specific intent to promote the RST gang. (Pet. at 6(h).) At trial, gang expert Detective Shawn Pate testified that a day before the instant shooting, members of the MS13 gang shot and killed Gizmo, a rival RST gang member. (Ans., Ex. 3, Vol. 2 at 382–83.) Pate opined that petitioner and other RST gang members committed a "retaliatory shooting" against the victims, whose family members were MS13 gang members. (*Id.* at 382–83.) The state appellate court rejected petitioner's ineffective assistance of counsel claim because Pate's testimony "concerned the actions and motivations of gang members in general" rather than petitioner's "subjective intent with respect to the shooting." (*Id.*, Ex. 8 at 34.) The jury "still had to determine that [petitioner] participated in the shooting and subjectively acted to promote RST." (*Id.* at 35.)

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, a petitioner first must establish such counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687–88. Second, the petitioner must establish prejudice resulting from counsel's

deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Where the petitioner is challenging the conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. It is unnecessary for a federal habeas court considering an ineffective assistance claim to address the prejudice prong of the *Strickland* test "if the petitioner cannot even establish incompetence under the first prong." *Siriprongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

Applying these principles to the instant matter, the Court concludes petitioner is not entitled to habeas relief on this claim. Petitioner's characterization of Pate's testimony — that Pate opined petitioner committed the shootings with the specific intent to promote the RST gang (Pet. at 6(h)) — is not supported by the record. The state appellate court noted that in California, a party may offer expert testimony to show the motivation for a particular crime, including retaliation, and whether and how the crime was committed to benefit or promote a gang. (Ans., Ex. 8 at 33.) Here, Pate's testimony concerned only the actions and motivations of RST gang members in general.

Pate, however, does mention that he believes petitioner is an RST because he "gets engaged in a retaliatory shooting for a hard core RST who is killed allegedly by an [MS13]." (Ans., Ex. 3, Vol. 2 at 377–78.)[11] Pate's statement, however, did not purport to show petitioner in fact committed the offense or had the requisite state of mind. The prosecutor still had to prove these facts through other evidence. Thus, it is reasonable to assume that any objection to Pate's testimony in this respect would have been denied. It is both

---

[11] Other factors that contributed to Pate's opinion included that petitioner lived in a known RST apartment within a neighborhood called the "RST compound," that he is able to socialize with others in the same area, specifically the "Green Store" which only RST members can occupy to sell narcotics, and that petitioner admitted he was an RST gang member. (Ans., Ex. 3, Vol. 2 at 376–78.)

reasonable and not prejudicial for an attorney to forego a meritless objection. *See Juan H.*, 408 F.3d at 1273. Accordingly, petitioner's claim is DENIED.

## IV.  Personal Presence

Petitioner claims the trial court violated his right to be present at all critical stages of a criminal trial. (Pet. at 6(l).) While the jury was deliberating, the court held a jurisdictional hearing to determine whether petitioner was a minor at least fourteen years of age at the time the offenses were committed, which would subject him to prosecution in superior court rather than juvenile court pursuant to California Welfare and Institutions Code § 707(d)(2)(A). (Ans., Ex. 4, Vol. 4 at 679.) Defense counsel expressly waived petitioner's presence for purposes of this inquiry. (*Id.* at 679–80.) Petitioner contends the hearing was evidentiary in nature, requiring proof of petitioner's age and fitness to be tried as an adult, and therefore his presence was necessary to the extent that petitioner could have refuted or resolved any conflicting evidence of his age. (Pet. at 6(n).)

The state appellate court rejected petitioner's claim because there was substantial proof that petitioner was over the age of 14, no matter how the evidence was viewed:

> The magistrate at the preliminary hearing had found [petitioner] to be "at least 14 years of age" at the time of the offenses and, specifically, "at least 16 years of age." No question on this point was ever raised at trial and [petitioner] suggests nothing he could have offered to demonstrate he was *not* over 14 years old. As the only conflict in the evidence [petitioner] points to is whether he was 15 or 16 years old, and the allegation was supported by uncontradicted proof he was over 14 years old, he has shown no prejudice from having the court determine the truth of the Welfare and Institutions Code section 707, subdivision (d)(2)(A) allegation in his absence. There is no reasonable possibility the outcome of the hearing would have been different if [petitioner] had been present.

(Ans., Ex. 8 at 38–39) (footnote omitted).

Due process protects a defendant's right to be present "at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (en banc). However, the Supreme Court has never held that exclusion of a defendant from a critical stage of the trial is a structural error. *Campbell v. Rice*, 408 F.3d 1166, 1172 (9th Cir. 2005). The right to be

present at all critical stages, like most constitutional rights, is subject to harmless error analysis "'unless the deprivation, by its very nature, cannot be harmless." *Id.* (quoting *Rushen v. Spain*, 464 U.S. 114, 117 n.2 (1983) (per curiam)).

Any error resulting from petitioner's exclusion from the jurisdictional hearing was not a structural error but was, instead, trial error subject to harmless error review under *Brecht*, 507 U.S. at 637. Petitioner has not demonstrated that he was adversely affected by his exclusion from the hearing. As the state appellate court noted, the only conflict in the evidence was whether petitioner was fifteen or sixteen years old. (Ans., Ex. 8 at 39.) Thus, it was reasonable to conclude that petitioner was at least fourteen years old. Because this satisfies the age element under California Welfare and Institutions Code § 707(d)(2)(A), any potential error was harmless. Accordingly, petitioner's claim is DENIED.

## CONCLUSION

The state court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED. A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals. The Clerk shall enter judgment in favor of respondents and close the file.

**IT IS SO ORDERED.**

DATED: May 25, 2012

RICHARD SEEBORG
United States District Judge